# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____

|   |   |
|---|---|
| MICHAEL EUGENE ROBINSON, by and through AGNES JOYCE ROBINSON, his legal guardian, 5330 E Street SE, Apt. #4 Washington, DC 20019-6079 <br><br> AGNES JOYCE ROBINSON 5330 E Street SE, Apt. #4 Washington, DC 20019-6079 <br><br>                         Plaintiffs, <br><br>         v. <br><br> BRANDON CARL FARLEY c/o Prince George's County Police Department – District III 7600 Barlowe Road Landover, MD 20785 <br><br> Officer BABCOCK c/o Prince George's County Police Department – District III 7600 Barlowe Road Landover, MD 20785 <br><br> THOMAS HILLIGOSS c/o Prince George's County Police Department – District III 7600 Barlowe Road Landover, MD 20785 <br><br> KENNETH MEUSHAW c/o Prince George's County Police Department – District III 7600 Barlowe Road Landover, MD 20785 <br><br> PRINCE GEORGE'S COUNTY POLICE DEPARTMENT County Administration Building 14741 Governor Oden Bowie Drive | **Civil Action No. 15-cv-00803** |

Upper Marlboro, Maryland 20772-3050          )
                                             )
PRINCE GEORGE'S COUNTY SHERIFF'S             )
   OFFICE                                    )
5303 Chrysler Way                            )
Upper Marlboro MD 20772                      )
                                             )
PRINCE GEORGE'S COUNTY                       )
County Administration Building               )
14741 Governor Oden Bowie Drive              )
Upper Marlboro, Maryland 20772-3050          )
                                             )
DISTRICT OF COLUMBIA                         )
Office of the Attorney General               )
441 4th Street, NW, Suite 600 South          )
Washington, DC 20001                         )
                                             )
UNIDENTIFIED OFFICERS of                     )
   Prince George's County Police Department, )
   Prince George's County Sheriff's Department, )
   Metropolitan Police Department,           )
   D.C. Department of Corrections            )
                                             )
                              Defendants.    )

## COMPLAINT

This civil rights action seeks redress for a series of unjustified acts, including assault and false arrest, committed by dozens of officers of the Prince George's County Police Department ("PGPD") and Prince George's County Sheriff's Office ("PGSO") against a disabled man who has never posed any threat to any law enforcement officer. These illegal acts were committed in the District of Columbia ("D.C.") in and near the Plaintiffs' home and were witnessed by numerous people. Officers of the Metropolitan Police Department ("MPD") failed to prevent these acts, despite sufficient knowledge and opportunity to do so. MPD did, however, prevent the Prince George's County officers from taking Michael Robinson out of the District. Although, certain of those MPD officers got plaintiff some of the medical care he needed as a result of the assaults, they proceeded to imprison him in jail overnight. The following day, after the charge

against him had been dropped, D.C. released him on his own in an unfamiliar location, despite the fact that their knowledge of his mental disability demanded a greater duty of care, placing him at risk of further injury.

## NATURE OF ACTION

1.      This is an action arising under the United States Constitution and 42 U.S.C. § 1983 ("§ 1983"), Title II of the Americans With Disabilities Act, as amended, 42 U.S.C. § 1231 *et seq.*, the District of Columbia Human Rights Act, D.C. Code § 2-1401 *et seq.*, and District of Columbia common law.

2.      Officer Brandon Farley intentionally and maliciously seized Plaintiff Michael Robinson without just cause, assaulted him repeatedly, and repeatedly used his TASER on Plaintiff without just cause.

3.      PGPD and PGSO officers, with firearms drawn, then entered Plaintiffs' home by pushing past Plaintiff Agnes Robinson, and took Plaintiff Michael Robinson to the street.

4.      PGPD officers then handcuffed Plaintiff Michael Robinson and placed him in a police cruiser.

5.      MPD officers then took custody of Plaintiff Michael Robinson and had him treated at a hospital and incarcerated for the night. He was taken to court the following day; the charge against him, misdemeanor assault on a police officer, was dismissed; and then he was released without regard to his mental incapacity.

## JURISDICTION AND VENUE

6.      This Court has original, federal question subject matter jurisdiction over the federal constitutional and § 1983 claims pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3).

7.      This Court has jurisdiction over the common law claims pursuant to 28 U.S.C. § 1367.

8.      Venue is proper in the United States District Court for the District of Columbia under 28 U.S.C. § 1391(b)(2) because all of Defendants' actions giving rise to the claims alleged herein occurred in Washington, DC.

## PARTIES

9.      Plaintiff Michael Eugene Robinson ("Michael") resides at 5330 E Street SE, Washington, DC, 20019.

10.      Plaintiff Agnes Joyce Robinson ("Mrs. Robinson") resides at 5330 E Street SE, Washington, DC, 20019. She is Michael's grandmother and legal guardian.

11.      Defendant Officer Brandon Carl Farley ("Farley"), whom Plaintiff sues in his individual and official capacities, is and was at all times relevant to this proceeding an officer of the PGPD, badge number 3696. Farley acted at all times relevant herein under color of Maryland law or under color of District of Columbia law, and, in whole or in part, in his capacities as agent or employee of PGPD.

12.      Defendant Babcock ("Babcock"), first name unknown, whom Plaintiff sues in his individual capacity, is and was at all times relevant to this proceeding an officer of the PGPD. Babcock acted at all times relevant herein under color of Maryland law or under color of District of Columbia law, and, in whole or in part, in his capacities as agent or employee of PGPD.

13.      Defendant Thomas Hilligoss ("Hilligoss"), whom Plaintiff sues in his individual capacity, is and was at all times relevant to this proceeding an officer of the PGPD. Hilligoss acted at all times relevant herein under color of Maryland law or under color of District of Columbia law, and, in whole or in part, in his capacities as agent or employee of PGPD.

14.      Defendant Alan Larmore ("Larmore"), whom Plaintiff sues in his individual capacity, is and was at all times relevant to this proceeding an officer of the PGPD. Larmore

acted at all times relevant herein under color of Maryland law or under color of District of Columbia law, and, in whole or in part, in his capacities as agent or employee of PGPD. Upon information and belief, Larmore was sued for excessive force and false arrest and accused of assault, battery, and filing a false statement in 2013.

15.     Defendant Corporal Kenneth Meushaw ("Meushaw"), whom Plaintiff sues in his individual capacity, is and was at all times relevant to this proceeding an officer of the PGPD. Meushaw acted at all times relevant herein under color of Maryland law or under color of District of Columbia law, and, in whole or in part, in his capacities as agent or employee of PGPD. Meushaw shot a District Heights police officer on December 07, 2013, during a traffic stop.  *See* http://pgpolice.blogspot.com/2013/12/pgpd-investigates-officer-involved.html.  Upon information and belief, Meushaw was sued for police misconduct in 2015, 2012, 2009.

16.     Defendant Prince George's County Police Department ("PGPD") is the local government agency that employs at all times relevant to this proceeding Farley and Unidentified Officers. It has law enforcement authority in Prince George's (MD) County. Upon information and belief it has some law enforcement authority in the District of Columbia by virtue of a reciprocal police mutual aid agreement.

17.     Defendant Prince George's County Sheriff's Office ("PGSO") is the local government agency serving as the law enforcement arm of the county's courts. It employs at all times relevant to this proceeding several of the Unidentified Officers. It has law enforcement authority in Prince George's (MD) County.  Upon information and belief it has some law enforcement authority in the District of Columbia by virtue of a reciprocal police mutual aid agreement.

18.     Defendant Prince George's County ("PGC") is the local government that maintains PGPD and PGSO and, through them, employs Farley and Unidentified Officers.

19.     Defendant District of Columbia ("D.C.") is the government that maintains MPD and the District's Department of Corrections.

20.     Defendants Unidentified Officers are the individuals who cooperated with the named defendants to deprive Plaintiffs of their clearly established constitutional rights. Each is an employee of PGPD, PGSO, PGC, or D.C. The officers and their responsible supervisory chain of command are sued in their individual capacities.

## FACTS

21.     Michael was born in 1987 with cerebral palsy, which has left him with physical and mental disabilities. These include an atrophied left arm and difficulty walking, as well as difficulties speaking and with his long-term memory. Because of his intellectual disabilities, his grandmother has remained his legal guardian since taking custody of him when he was five years old. He is approximately 5'3" tall and weighs approximately 127 pounds.

22.     Michael is a graduate of Spingarn High School, where he attended Special Education classes, and he has taken job training courses but had not been able to secure employment. He lives with his grandmother and frequently ran errands such as buying groceries her or himself, and would do the laundry.  He would also visit the local library every day.

23.     On May 30, 2014, Michael left home intending to travel to the CVS at 320 40th St. NE *via* a Metrobus in order to buy trash bags to do his laundry.

24.     While he was waiting at a bus stop on 53rd Street, he noticed three police cars. Deeply unnerved by the officers, one or two of whom were giving him unfriendly looks, he turned and walked back home.

25.    Farley followed, parking his car just east of the intersection of 53rd and E Streets SE, and proceeding on foot.

26.    Michael was coöperative and showed Farley both his non-driver's license and his D.C.-issued disability card as forms of identification and as partial explanation that Michael did not understand what Farley wanted. Farley shouted profanities at Michael, who was very disturbed and confused by and as to what was going on and why.

27.    Farley struck Michael in the hallway or stairwell of Plaintiffs' apartment building and used his TASER on Michael. The noise of their altercation alerted Mrs. Robinson and a neighbor that something was going on and both saw, through their respective apartment doors, Farley dragging Michael towards the street door of the building.

28.    Mrs. Robinson and the neighbor followed Farley and Michael as they struggled out the building's front door. Farley had his arm around Michael's throat and was dragging him by his neck. Michael struggled in self-defense to protect himself against being choked, dragged, and struck.

29.    Farley stood behind Michael with both arms around Michael and Farley's TASER drawn, and may have attempted to use the TASER against Michael again. Farley struck Michael in the face with the TASER in his right hand and then struck Michael with his left hand. Farley screamed, "Let go of my weapon!", though Michael was neither touching nor reaching for any of Farley's weapons, before dropping his right hand to his waist and swinging the TASER, apparently at full force, into the right side of Michael's head, producing a loud crack.

30.    Mrs. Robinson, less than fifteen feet away, was repeatedly explaining in a loud and pleading tone that Michael is her grandson, not a threat, and does not understand what Farley

wants. When Farley struck Michael in the side of the head with the TASER, Michael spun away. Farley responded by drawing his firearm and pointing it forward, and then calling for backup.

31.     Michael ran into the apartment building and into Plaintiffs' apartment where he hid in the bathroom.

32.     Farley entered the apartment building's foyer and then exited, still with his drawn firearm in his right hand, though now pointed at the ground, and his TASER in his left hand.

33.     Mrs. Robinson continued crying and pleading with Farley. "Oh, God! That's my grandson. He has a problem!" she cried. Neighbors shouted things like "He's sick!" Farley responded to none of these remarks about Michael's mental competency. Mrs. Robinson then entered her apartment building's foyer. A witness asked Farley, "Why'd you hit him? I told you he has a problem!"

34.     Farley then holstered his firearm and TASER. He walked approximately 250 feet to his cruiser – car 5174, license plate PG 3496 -- with his back turned to Plaintiffs' apartment building and many witnesses, entered the cruiser, and drove it back to double-park in front of Plaintiffs' building.

35.     Farley exited his cruiser and drew his firearm again while shouting at witnesses, none of whom were anywhere near him, "It's 100 on 1; you don't think I need a gun?!" He brushed past Mrs. Robinson into the foyer and order her, "You tell him to come out here unarmed." She turned and went down the steps towards her apartment. When she reached the apartment, Mrs. Robinson called 9-1-1 and reported that a Maryland officer was beating her grandson.

36.     Farley immediately exited the building and stood at the bottom of the stairs with his firearm drawn, alternately talking on his radio and conversing with the neighbor who

explained that Michael is disabled. Farley shouted, presumably at Mrs. Robinson, "Is he gonna' come out with his hands up or not? We're gonna' kick the whole building in if he doesn't come out."

37.     The first two additional police vehicles, both PGPD, arrived approximately four minutes after Farley struck Michael in the head with his TASER and released him. Farley and two PGPD officers entered the apartment building foyer, all three with firearms drawn.

38.     The first MPD officer then arrived on the scene, and told the witnesses who were demanding to know why PGPD was acting in Washington, "They're doing their thing." The MPD officer then walked into the foyer while talking on his radio. By five-and-a-half minutes after Farley struck Michael with the TASER, there were approximately fifteen police vehicles on the block – including PGPD, MPD, and PGSO – and many officers, including at least two PGSO officers in tactical gear.  At this point or shortly thereafter, the arriving officers confirmed that Farley was safe.

39.     Witnesses repeatedly told officers, including the MPD officer, things like "Excuse me, sir; he's mentally challenged," and, "And he was asking, What did he do?"

40.     Mrs. Robinson opened the patio door of her apartment, located just to the east of the building entrance's stairs, to talk with the numerous officers outside, repeating that Michael had a disability and that there was no cause to have beat him and that unidentified officers were beating on her front door. A PGSO officer in tactical gear and at least three PGPD officers, all with drawn firearms, then rushed past her into the apartment while she looked on in horror and pled for mercy.

41.     As PGSO, PGPD, and MPD officers continued to pour in, an MPD officer reported, "They got him in the bathroom." Upon information and belief, other, unidentified

officers entered the apartment through the front door. When the officers found Michael in the bathroom, he walked across the apartment's corridor and into Mrs. Robinson's bedroom. Unidentified officers proceeded to beat and kick Michael. He lost a shoe in the process.

42.     Numerous witnesses, politely and from a distance, repeatedly explained things like "He don't know no better." and, "That man got major health problems!"

43.     Mrs. Robinson continued pacing back and forth on her patio in severe emotional distress but not one officer made any attempt to speak with her.

44.     Michael was cuffed and marched outside, but not searched, and put into the passenger seat of Farley's cruiser, PGPD car #5174, license plate PG 3496. The car was driven approximately thirty (30) feet east on E Street.

45.     Michael, in cuffs and a single shoe, was stood beside PGPD car #5174, with MPD officers, Farley, and several other PGPD officers standing by him, while additional PGPD and PGSO officers stood slightly further away. The MPD officers patted Michael down, removing various objects from his pockets, and talked with him. They held Michael while at least two PGPD officers took photographs of Michael's face with a camera, and the MPD officers later removed a set of handcuffs from Michael's wrists, presumably an extra set of cuffs belonging to PGPD as Michael remained cuffed. At no point did any officer attempt to get Michael his second shoe to wear.

46.     MPD sent Michael to the Not-for-Profit Hospital, *d.b.a.* United Medical Center, *a.k.a.* Greater Southeast Community Hospital, in an ambulance and he arrived at approximately 3:20PM. He later received a bill from DC Fire and EMS Department for $508.00 for the ALS1 Emergency ambulance call. At the hospital, doctors treated him for rapid heartbeat and administered an analgesic and a shot for Tetanus/Diphtheria. They also removed a hook for the

taser that was lodged in his back.  He was discharged into police custody at approximately 9:20PM.

47.     Michael was then sent to the Central Cell Block of the D.C. Jail where he spent the night. Michael was taken to the courthouse the following day and the charge against him, misdemeanor assault on a police officer (Farley), was dismissed. Despite his diminished mental capacity, Michael was released from D.C. custody without any assistance in getting home. Michael's uncle, Eric Robinson, arrived at the courthouse at approximately 9:00AM and tried to find Michael. At approximately 3:00PM, he asked a clerk where Michael might be and was told that Michael had been released that morning. Eric Robinson found Michael wandering about the plaza before the courthouse in only one shoe, feeling disoriented, scared, and unsure what to do.

48.     Since the assault, Michael has been treated with anti-epileptic medicines and pain medications and has been in therapy. He has become scared to leave home and do the activities he used to do such as visiting CVS and the library, frighten of the police, upset, and confused. He has been restless and has had nightmares and difficulty sleeping.  He often hides in the bathroom because he is so upset.

49.     The police vehicles on the scene on May 30 are believed to have included:

| Agency | Car # | License |
|---|---|---|
| [Maryland] | Unmarked | 1AV-M95 |
| [D.C.] | Unmarked | DC 10480 |
| MPD | 6034 | DC 8272 |
| MPD | | DC 9109 |
| MPD | | DC 9474 |
| MPD | 659 | DC 9484 |
| MPD | 6031 | DC 9874 |
| Seat Pleasant | | LG 86104 |
| PGPD | | LG 99386 |
| PGPD | 4613 | PG 2817 |
| PGPD | | PG 2859 |

| Agency | Car # | License |
|--------|-------|---------|
| PGPD | 4701 | PG 2891 |
| PGPD | 4736 | PG 2939 |
| PGPD | 4825 | PG 2969 |
| PGPD | 4792 | PG 3018 |
| PGPD | 4851 | PG 3054 |
| PGPD | 4929 | PG 3135 |
| PGPD | 4961 | PG 3294 |
| PGPD | 4979 | PG 3378 |
| PGPD | 5102 | PG 3416 |
| PGPD | 5174 | PG 3496 |
| PGPD | 5215 | PG 3577 |
| PGPD |  | PG 3620 |
| PGPD | 5349 | PG 3710 |
| PGPD | 5355 | PG 3716 |
| PGPD | 1253 | PG 3853 |
| PGPD |  | PG 3968 |
| PGSO |  | SA 4420 |
| PGSO | 12 | SA 4423 |

## CLAIMS FOR RELIEF

### COUNT I
### Violation of the Fourth and Fifth or Fourteenth Amendments – 42 U.S.C. § 1983
### Assault and Battery
### (Michael Robinson Against Farley, PGPD, & PGC)

50.     The preceding paragraphs 1 through 49 are incorporated herein by reference.

51.     Farley made many intentional attempts to do physical harm to Michael. In addition, Farley repeatedly struck Michael and caused other harmful or offensive bodily contact.

52.     Farley's conduct was not reasonably necessary given that Michael was coöperative and, because of his physical disabilities, posed no danger to Farley. Michael only physically resisted Farley in self-defense after Foley had struck him.

53.     As a result of Farley's conduct, Michael suffered substantial damages including, but not limited to, physical pain and suffering and both mental and emotional distress.

54.     Farley, who assaulted and battered Michael while acting under color of law, violated Michael's rights under the Fourth and the Fifth or Fourteenth Amendments to the United States Constitution and is liable to Michael for damages under § 1983 and the common law of the District of Columbia.

## COUNT II
### Negligence
### (Michael Robison Against Farley, PGPD, & PGC)

55.     The preceding paragraphs 1 through 49 are incorporated herein by reference.

56.     At no time during his pursuit of Michael did Foley adequately take account of Michael's mental and physical disabilities, despite attempts by Michael, Mrs. Robinson, and numerous witnesses to explain them.

57.     This failure to attempt to understand the situation breached the reasonable standard of care expected of all law enforcement officers.

58.     Farley's failure to attempt to understand the situation led him to negligently escalate the situation, including his repeated assaults and batteries of Michael and the acts of the other Defendants against Plaintiffs.

59.     As a result of Farley's negligent conduct, Michael suffered substantial damages including, but not limited to, physical pain and suffering and both mental and emotional distress.

60.     Farley is, therefore, liable to Michael for damages under the common law of the District of Columbia.

## COUNT III
### Violation of the Fourth and Fifth or Fourteenth Amendments – 42 U.S.C. § 1983
### Excessive Force
### (Michael Robinson Against Farley, PGPD & PGC)

61.     The preceding paragraphs 1 through 60 are incorporated herein by reference.

62.     Under an objective standard of reasonableness, Foley's use of force against Michael was excessive as Michael was coöperative, posed no threat to Foley, did not resist until Foley assaulted him, and had neither committed, nor was, nor appeared likely to be about to commit any illegal act.

63.     As a result of Foley's excessive force, Michael suffered substantial damages including, but not limited to, physical pain and suffering and both mental and emotional distress.

64.     Farley, who assaulted and battered Michael while acting under color of law, violated Michael's rights under the Fourth and the Fifth or Fourteenth Amendments to the United States Constitution and is liable to Michael for damages under § 1983 and the common law of the District of Columbia.

## COUNT IV
### Violation of the Fourth and Fifth or Fourteenth Amendments – 42 U.S.C. § 1983
### Excessive Force
### (Michael Robinson Against Babcock, Hilligoss, Meushaw, Unidentified Officers of PGPD & PGSO, PGPD, & PGC)

65.     The preceding paragraphs 1 through 64 are incorporated herein by reference.

66.     At least nineteen (19) marked vehicles of PGPD and at least two (2) of PGSO, with at least as many armed officers, were engaged in the raid on Plaintiffs' home. Officers associated with these vehicles not only failed to inquire as to any special needs Michael might have but actively refused to listen to the explanations proffered by Mrs. Robinson and multiple neighbors or to take the facts those people provided into account.

67.     Instead, at least seven armed PGPD and PGSO officers forced their way into Plaintiffs' apartment through the patio door, pushing past Mrs. Robinson, and other officers forced their way through the front door.

68.     When they found Michael, these officers beat and kicked him before cuffing him and forcibly marching him out of the apartment.

69.     There was no reasonable basis on which to believe that the number of officers, which created additional confusion or risk thereof, or the show of force, including the numerous drawn firearms, were necessary or appropriate to effect the questioning or even seizure or arrest of Michael and significant evidence that both were unnecessary. There was no reasonable basis to justify the beating and kicking of Michael who was scared but coöperative.

70.     As a result of these PGPD and PGSO officers' use of excessive force, Michael suffered substantial damages including, but not limited to, physical pain and suffering and both mental and emotional distress.

71.     These unidentified officers, who may have included any or all of the named Defendants, who assaulted and battered Michael while acting under color of law, violated Michael's rights under the Fourth and the Fifth or Fourteenth Amendments to the United States Constitution and are liable to Michael for damages under § 1983 and the common law of the District of Columbia.

**COUNT V**
**Violation of the Fourth and Fifth or Fourteenth Amendments – 42 U.S.C. § 1983**
**Unreasonable Search**
**Trespassing**
**(All Plaintiffs Against All Defendants)**

72.     The preceding paragraphs 1 through 71 are incorporated herein by reference.

73.     The unidentified PGPD and PGSO officers, and any unidentified MPD officers, who engaged in the raid on Plaintiffs' home, entered that private property without requesting or receiving permission from Plaintiffs or anyone else.

74.     Their entry was against the will of the lawful occupants, as expressed by Plaintiffs' locking the doors and refusing to open them when so demanded by officers, and the officers had no lawful authority so to enter. Mrs. Robinson's exercising of her right to open her patio door did not constitute an expression of, let alone an actual, change in her will.

75.     The officers' entry was unauthorized and interfered with Plaintiffs' right to be secure in their home and persons.

76.     These unidentified officers, who may have included any or all of the named Defendants, who trespassed on Plaintiffs' property while acting under color of law, violated Plaintiffs' rights under the Fourth and the Fifth or Fourteenth Amendments to the United States Constitution and are liable to Michael for damages under § 1983 and the common law of the District of Columbia.

## COUNT VI
### Violation of the Fourth and Fifth or Fourteenth Amendments – 42 U.S.C. § 1983
### Unreasonable Seizure or False Arrest
### (Michael Robinson Against All Defendants)

77.     The preceding paragraphs 1 through 76 are incorporated herein by reference.

78.     Farley made false and malicious allegations to MPD and PGPD officers that Michael had assaulted Farley, many of which allegations were demonstrably and visibly false to the officers at the time.

79.     After being found in the bathroom of Plaintiffs' apartment, Michael was handcuffed and placed in the passenger seat of Farley's cruiser.

80.     There was no reasonable basis on which to believe that Michael had committed or was about to commit a crime. The officers' seizure or arrest of Michael was not justified at its inception, nor were there later circumstances sufficient to justify such a seizure or arrest.

81.     As a result of Farley's and of these PGPD officers' unreasonable seizure or arrest of Michael, he suffered substantial damages including, but not limited to, physical pain and suffering and both mental and emotional distress.

82.     Farley and these unidentified officers, who may have included any or all of the named Defendants, who unreasonably seized or arrested Michael while acting under color of law, violated Michael's rights under the Fourth and the Fifth or Fourteenth Amendments to the United States Constitution and are liable to Michael for damages under § 1983 and the common law of the District of Columbia.

**COUNT VII**
**Violation of the Fourth and Fifth or Fourteenth Amendments – 42 U.S.C. § 1983**
**Denial of Due Process &**
**Failure to Supervise**
**Failure to Train**
**Failure to Intercede/Intervene**
**(Michael Robinson Against All Defendants)**

83.     The preceding paragraphs 1 through 82 are incorporated herein by reference.

84.     Michael, Mrs. Robinson, the neighbor, and numerous other witnesses attempted to or successfully informed the various officers at the scene of Michael's mental disability. The disability card he had in his pocket, which he showed as identification and explanation, gave them subjective knowledge of his special needs and the particular risks he faced from their conduct. Their behavior, therefore, was deliberately indifferent to their duty to him.

85.     The actions, over-actions, excessive force, and negligence of Farley and unidentified officers of PGPD and PGSO demonstrate a failure to provide adequate or proper training or supervision by PGPD and PGSO, and PGC generally, that indicates a deliberate indifference to the safety of the civilians whom its officers seek to question or bring into custody, in disregard of the heightened duty these officers owe to the personal safety of such civilians.

86.     Unidentified officers of PGPD and PGSO were aware that other officers were engaged in unlawful acts, including the use of excessive force against Michael, and had a reasonable opportunity to prevent the harm, yet chose not to act, in violation of their duty to intercede to prevent the violations of Plaintiffs' constitutional and common law rights.

87.     The failure of MPD officers to prevent the misconduct of the PGPD and PGSO officers, despite the fact that all relevant actions took place within the District of Columbia and MPD officers were on the scene in force before the raid on the apartment, indicates such a failure by DC to adequately train or supervise its officers as to constitute deliberate indifference to the obligations MPD owes to citizens of the District of Columbia. The MPD officers had a reasonable opportunity to prevent the harm done by Farley and the PGPD and PGSO officers yet chose not to act, in violation of their duty to intercede to prevent the violations of Michael's constitutional and common law rights.

88.     As a result of these failures to train their law enforcement officers and failures to intercede, Plaintiffs were deprived of their rights to Due Process and/or Equal Protection under the Fifth and/or Fourteenth Amendments. Michael suffered substantial damages including, but not limited to, physical pain and suffering and both mental and emotional distress, and Mrs. Robinson suffered substantial damages including but not limited to mental and emotional distress.

89.     Farley and the unidentified PGPD and PGSO officers, who may have included any or all of the named Defendants, who assaulted and battered Michael and failed to intervene while acting under color of law, violated Michael's rights under the Fourth and the Fifth or Fourteenth Amendments to the United States Constitution and Mrs. Robinson's rights under

common law and are liable to Plaintiffs for damages under § 1983 and the common law of the District of Columbia.

90.     The unidentified MPD officers, who were operating under color of District of Columbia law, failed to intervene and violated Michael's rights under the Fourth and Fifth Amendments to the United States Constitution and Mrs. Robinson's rights under common law and are liable to Plaintiffs for damages under § 1983 and the common law of the District of Columbia.

**COUNT VIII**
**Violation of the Fourth and Fifth Amendments – 42 U.S.C. § 1983**
**False Arrest**
**False Imprisonment**
**(Michael Robinson Against Farley, Unidentified Officers of MPD, & D.C.)**

91.     The preceding paragraphs 1 through 90 are incorporated herein by reference.

92.     Farley made false and malicious allegations to MPD and PGPD officers that Michael had assaulted Farley, many of which allegations were demonstrably and visibly false to the officers at the time.

93.     Michael was handcuffed and kept in MPD custody in the ambulance to the hospital, while he was at the hospital, and until he reached D.C. Jail, at which time he was transferred to the custody of the Department of Corrections. He spent the night and part of the next day in the custody of Department of Corrections, or MPD officers.

94.     There was no reasonable basis on which to believe that the arrest of Michael was lawful.

95.     As a result of these D.C. officers' false of arrest Michael, he suffered substantial damages including, but not limited to, physical pain and suffering and both mental and emotional distress.

96.     Farley and these unidentified officers, who falsely arrested Michael while acting under color of District of Columbia law, violated Michael's rights under the Fourth and Fifth Amendments to the United States Constitution and are liable to Michael for damages under § 1983 and the common law of the District of Columbia.

### COUNT IX
### Americans With Disabilities Act
### (Michael Robinson Against PGPD, PGSO, PGC, & D.C.)

97.     The preceding paragraphs 1 through 96 are incorporated herein by reference.

98.     Michael Robinson is a person with a disability as defined by 42 U.S.C. § 12102 because cerebral palsy substantially limits *inter alia*, his ability to walk, run, and interact with people.

99.     Farley had actual knowledge of Michael Robinson's disability when he saw the disability card.

100.    Defendants Babcock, Hilligoss, Meaushaw knew or should have known that Michael Robinson is a person with a disability.

101.    Farley, Babcock, Hilligos, and Meaushaw failed to accommodate Michael Robinson in their interactions with Michael.

102.    Their employers PGPD, PGSO & PGC are vicariously liable for their violations of Title II of the Americans with Disabilities Act.

103.    D.C. and its officers had subjective knowledge that Michael had a mental disability. He had a disability ID card issued by the City and Mrs. Robinson was registered with the City as his guardian. The card was in his possession on May 30 and not only did he show it but, during the search incident to his arrest, the MPD officers patting him down found it.

104.    D.C., therefore, knew that it had a special duty to Michael because of his mental disability. It breached that duty by releasing him on his own, rather than into the custody of a guardian or other person acting *in loco parentis*. As a result of that breach, Michael found himself stranded, alone and frightened, in a strange place until his uncle was able to find him. This caused him serious emotional distress, as well as putting him at risk of physical injury.

105.    The release denied Michael the protections and other benefits of the services provided by D.C. to pretrial detainees, placing him at risk and causing him damage. The release also constituted discrimination against him on the grounds of his mental disability as it involved D.C. and its officers placing him into a situation made dangerous specifically because of his disability. D.C. failed to accommodate for Michael's disability despite knowing of it; having taken him from his home where he was safe and able to care for himself, D.C. and its officers placed him in an unfamiliar place, far from his home, without regard to his disability.

106.    Whether that release was the action of MPD, the Department of Correction, those charged with the custody of Michael were employed by D.C.

107.    D.C. is, therefore, vicariously liable to Michael for damages under Title II of the Americans With Disability Act.

## COUNT X
### D.C. Human Rights Act
### (Michael Robinson Against All Defendants)

108.    The preceding paragraphs 1 through 96 are incorporated herein by reference.

109.    Michael Robinson is a person with a disability as defined by D.C. Code. § 2-1402.02(5A) because cerebral palsy substantially impairs *inter alia*, his ability to walk, run, anad interact with people.

110.    Farley had actual knowledge of Michael Robinson's disability when he saw the disability card.

111.    Defendants Babcock, Hilligoss, Meaushaw knew or should have known that Michael Robinson is a person with a disability.

112.    Farley, Babcock, Hilligos, and Meaushaw failed to accommodate Michael Robinson in their interactions with Michael.

113.    Their employers PGPD, PGSO & PGC are vicariously liable for their violations of the D.C. Human Rights Act.

114.    D.C. and its officers had subjective knowledge that Michael had a mental disability. He had a disability ID card issued by the City and Mrs. Robinson was registered with the City as his guardian. The card was in his possession on May 30 and not only did he show it but, during the search incident to his arrest, the MPD officers patting him down found it.

115.    D.C., therefore, knew that it had a special duty to Michael because of his mental disability. It breached that duty by releasing him on his own, rather than into the custody of a guardian or other person acting in loco parentis. As a result of that breach, Michael found himself stranded, alone and frightened, in a strange place until his uncle was able to find him. This caused him serious emotional distress, as well as putting him at risk of physical injury.

116.    The release denied Michael the protections and other benefits of the services provided by D.C. to pretrial detainees, placing him at risk and causing him damage. The release also constituted discrimination against him on the grounds of his mental disability as it involved D.C. and its officers placing him into a situation made dangerous specifically because of his disability. D.C. failed to accommodate for Michael's disability despite knowing of it; having

taken him from his home where he was safe and able to care for himself, D.C. and its officers placed him in an unfamiliar place, far from his home, without regard to his disability.

117.    Whether that release was the action of MPD or the Department of Corrections, those charged with the custody of Michael were employed by D.C.

118.    D.C. is, therefore, vicariously liable to Michael for damages under the D.C. Human Rights Act.

119.    The individuals defendants are liable to Michael in their individual capacities under the D.C. Human Rights Act.

## COUNT XI
### Intentional Infliction of Emotional Distress
### (All Plaintiffs Against All Defendants)

120.    The preceding paragraphs 1 through 107 are incorporated herein by reference.

121.    The entirety of Farley's conduct towards Michael was both extreme and outrageous, and he carried it forth intentionally in front of Mrs. Robinson, Michael's grandmother and guardian, in complete disregard of all of her pleas and explanations of Farley's error, those of other witnesses, obvious facts, and evidence Michael presented to Farley.

122.    Farley and the unidentified officers of PGPD, PGSO, and MPD, who may have included any or all of the named Defendants, engaged in extreme and outrageous conduct when they sent more than thirty (30) officers to the scene, many with weapons drawn, who intentionally and recklessly forced their way into Plaintiffs' apartment by pushing past Mrs. Robinson.

123.    Seeing her grandson beaten, severely injured, and then arrested by men who forced their way into her apartment by pushing past her and entering a door she had opened caused Mrs. Robinson severe emotional distress.

124.    These defendants, who may have included any or all of the named Defendants, are, therefore, liable to Mrs. Robinson for damages under the common law of the District of Columbia.

**COUNT XII**
**Defamation**
**Invasion of Privacy – False Light**
**(Michael Robinson Against Farley, PGPD & PGC)**

125.    The preceding paragraphs 1 through 124 are incorporated herein by reference.

126.    Farley made false and malicious allegations to MPD and PGPD officers, not only in police reports he filed in the exercise of his official duties but in complaints he voluntarily filed, that Michael had committed the crime of assaulting a police officer (Farley).

127.    Farley made these allegations with full knowledge that they were false.

128.    Farley's allegations placed Michael in a false light, depicting him as a violent, lawless person who would assault a police officer who was merely attempting to do his duty. Such a false depiction of one's character would be highly offensive to any reasonable person.

129.    As a result of Farley's actions, Michael has been confused, hurt, and suffered emotional distress. Mrs. Robinson has also suffered emotional distress as a result of Farley's actions.

130.    Foley, who publicized these false allegations about Michael in his personal and official capacities, violated Plaintiffs' rights and is liable to Plaintiffs for damages under the common law of the District of Columbia.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs Michael E. Robinson and Agnes Joyce Robinson pray for judgment as follows:

a)  An award of compensatory damages in an amount to be determined that would fully compensate Plaintiffs for their injuries caused by the conduct of the Defendants alleged herein, including: emotional distress, pain and suffering, anxiety, anguish, feeling of unjust treatment, and fear;

b)  An award of punitive damages in an amount to be determined that would punish the Defendants for the intentional and reckless conduct alleged herein and that would effectively deter the Defendants and others similarly situated from engaging in similar conduct in the future;

c)  An award of Plaintiff's costs and reasonable attorneys' fees in this action pursuant to 42 U.S.C. §§ 1983, 1988, and 12205, and D.C. Code § 2-1403.13(a)(1)(E).

d)  Appropriate injunctive relief; and,

e)  An order granting such other relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff requests trial by jury as to all issues in this case.

Dated: June 1, 2015                         Respectfully submitted,


                                            _____/s/ Dennis A. Corkery_____
                                            Dennis A. Corkery (D.C. Bar No. 1016991)
                                            Matthew K. Handley (D.C. Bar No. 89946)
                                            WASHINGTON LAWYERS' COMMITTEE FOR
                                            CIVIL RIGHTS AND URBAN AFFAIRS
                                            11 Dupont Circle, Suite 400
                                            Washington, DC 20036
                                            Phone: (202) 319-1000
                                            Email: dennis_corkery@washlaw.org

                                            *Counsel for Plaintiffs*