UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

---------------------------------)
                                 )
MICHAEL ROBINSON, *et al.*,      )
                                 )
         Plaintiffs,             )
                                 )
    v.                           )    No. 15-cv-0803 (KBJ)
                                 )
BRANDON CARL FARLEY, *et al.*,   )
                                 )
         Defendants.             )
---------------------------------)

# MEMORANDUM OPINION

On May 30, 2014, Plaintiff Michael Robinson ("Robinson")—a 28-year-old man with cerebral palsy and intellectual disabilities—encountered a Prince George's County police officer while Robinson was sitting at a bus stop on his way to purchase trash bags. (*See* Third Am. Compl. ("Compl."), ECF No. 62, ¶¶ 1–2, 56.) This chance encounter escalated quickly; the lone officer began trailing Robinson, who hastily exited the bus-stop area and retreated to the nearby home of his grandmother and caretaker, Agnes Joyce Robinson ("Mrs. Robinson"). (*See id.* ¶¶ 1, 3.) Eventually, regional officers from "at least 29 police vehicles" responded to the scene, entered the Robinsons' home, and "beat[,]" "kick[ed,]" and "tased" Robinson before finally arresting him. (*Id.* ¶¶ 3–5, 71.) Although no criminal charges against Robinson were ultimately pursued, as a result of this unfortunate encounter, Michael and Agnes Robinson have brought an assortment of civil claims against the District of Columbia, Prince George's County, and various individual-officer employees of the D.C. Metropolitan Police Department ("MPD"), the Prince George's County Police Department ("PGPD"), and the Prince George's County Sheriff's Office ("PGSO").

(*See generally id.*)

Before this Court at present is a motion to dismiss that the individual MPD Officers and the District of Columbia (collectively, "the District Defendants") have filed. (*See generally* ECF No. 61 ("Defs.' Mot").) In the motion, which is brought under Federal Rule of Civil Procedure 12(b)(6), the MPD Officers argue that the Robinsons' 204-paragraph complaint "contains no specific allegation as to any of the individual District officer defendants and, hence, operates on a completely vague, speculative level that necessitates dismissal." (*Id.* at 7; *see also* Apr. 27, 2017 Hr'g Tr. ("Hr'g Tr."), ECF No. 79, at 8 (asserting that the Robinsons' complaint is "conclusory and unsupported as to who did what").)[1] For its part, the District argues that the Robinsons' trespass claim against it (Count VII) should be dismissed, because Plaintiffs fail to allege adequately all of the elements of this claim. (*See* Defs.' Mot. at 8–9.)

For the reasons explained fully below, this Court rejects the MPD Officers' contention that the Robinsons are required to identify the precise actions of each individual police officer during the alleged altercation in order to withstand a Rule 12(b)(6) motion to dismiss. To the contrary, the Court finds that the Robinsons' complaint contains sufficient factual allegations regarding the MPD Officers' collective actions during the May 30th confrontation to support the continued prosecution of this action against the named individual defendants, and the Court also concludes that the complaint adequately alleges all elements of a trespass claim against the District. Consequently, the District Defendants' motion to dismiss will be **DENIED**. A separate Order consistent with this Memorandum Opinion will follow.

---

[1] Page-number citations to documents the parties have filed refer to the page numbers that the Court's electronic filing system assigns.

## I. BACKGROUND

### A. Factual Background[2]

Michael Robinson—a 28-year-old man with cerebral palsy, intellectual disabilities, an atrophied left arm, and a diminutive frame—has difficulty walking, speaking, and processing information. (*See* Compl. ¶¶ 1, 56.) Because of his "physical and intellectual limitations," Robinson lives with his grandmother in the Marshall Heights neighborhood of Washington, D.C. (*Id.* ¶ 56.)

On May 30, 2014, Robinson was sitting at a bus stop near his home when he noticed the gaze of a police officer across the street. (*See id.* ¶¶ 2, 57.) This officer (who was later identified as Officer Brandon Farley of the PGPD) had been called to the District of Columbia to hunt for suspected car thieves. (*See id.* ¶ 58.) Because Officer Farley's gaze made Robinson feel "anxious," Robinson decided to walk back toward the apartment that he shared with his grandmother. (*Id.* ¶ 57.) As Robinson began to return home, Officer Farley exited his vehicle and pursued Robinson on foot. (*See id.* ¶¶ 3, 59.)

The complaint alleges that, at some point, Officer Farley spoke to Robinson, asking him for identification, and Robinson presented Officer Farley with his disability identification card. (*See id.* ¶ 59.) Nevertheless, Plaintiffs allege that Officer Farley continued to follow Robinson into the stairwell just outside of the Robinsons' apartment unit without any "provocation or justification," and that Officer Farley "struck Michael, threw him down on the steps, held him there, and tased him." (*Id.* ¶¶ 59–60.) Meanwhile, upon hearing loud noises in the stairwell, Mrs. Robinson ran to her door

---

[2] The facts recited below are drawn from the Third Amended Complaint. (*See* ECF No. 62.)

3

and looked through her peephole. (*See id.* ¶ 60.) Mrs. Robinson allegedly saw her grandson sprawled out on the steps (*see id.*), and as she looked on, Officer Farley purportedly dragged Robinson by the neck to the outside of the building (*see id.* ¶ 61). At some point, Robinson managed to break free from Officer Farley's grasp and raced into his apartment, where he hid in the bathroom. (*See id.*)

The complaint alleges that, while Robinson was hiding in the bathroom, Mrs. Robinson and her neighbors repeatedly attempted to inform Officer Farley of Robinson's disabilities. (*See id.* ¶ 63.) Undeterred, Officer Farley called for backup and returned to the bus stop to retrieve his police cruiser. (*See id.* ¶ 62.) He then paced in front of the Robinsons' building with his firearm and taser drawn, "notwithstanding [the fact] that the situation he caused had stabilized[.]" (*Id.* ¶ 62.) When Mrs. Robinson's repeated efforts to reason with Officer Farley failed, she returned to her apartment and "called 911 to report that a Maryland police officer was attacking her grandson." (*Id.* ¶ 65.)

According to the complaint, the situation continued to escalate from there. While Mrs. Robinson was inside her apartment, additional officers from the PGPD, PGSO, and MPD arrived at the apartment complex—at least 29 law enforcement vehicles responded to Officer Farley's call, in all. (*See id.* ¶ 4.) Plaintiffs allege that, as the various officers arrived, witnesses at the apartment complex "repeatedly told them things like, 'Excuse me, sir; he's mentally challenged[.]'" (*Id.* ¶ 68.) In addition, according to the complaint, the officers had "confirmed with Farley that [Farley] was safe" by this time. (*Id.* ¶ 69.) Mrs. Robinson also allegedly attempted to plead with the arriving officers; she opened the patio door of her apartment—which was located just to

4

the side of the building entrance's stairs—and reiterated to the officers who had gathered outside that Robinson was disabled. (*See id.*) The complaint alleges that, despite Mrs. Robinson's statements, the officers "rushed past [her] and into the apartment, with firearms drawn, while she loudly screamed, 'No!'" (*Id.* ¶ 70.) Plaintiffs allege that none of the officer defendants had a search warrant or an arrest warrant, and that Mrs. Robinson did not consent to this entry into her home. (*See id.* ¶ 70.) Once inside the apartment, the officers found Robinson unarmed in the bathroom, at which point they allegedly grabbed, hit, shouted at, and kicked him. (*See id.* ¶ 71.) The officers then handcuffed Robinson and placed him under arrest. (*See id.* ¶¶ 5, 73.)

After being restrained, Robinson was initially placed into Officer Farley's police cruiser, but District of Columbia MPD Officers transferred him to an ambulance, and he was transported to a local hospital, where doctors removed a taser spike from his back and treated him for a rapid heartbeat, cuts, and bruises. (*See id.* at ¶¶ 73–74.) Robinson was subsequently discharged into MPD custody, and was detained overnight by the D.C. Department of Corrections. (*See id.* ¶ 75.) For his part, Officer Farley submitted several written narrative accounts of the events leading up to Robinson's arrest, and made various allegations in those statements, including that Robinson "struck him on the left temple" prior to the use of his taser; that Robinson attempted to take the taser away from him; and that there was an unruly crowd surrounding him at the Robinsons' apartment building. (*Id.* ¶ 6.)[3] Plaintiffs allege that there is a contemporaneous video that reveals that Officer Farley's assertions are untrue. (*See id.*)

---

[3] Plaintiffs have attached Officer Farley's narratives as exhibits to their complaint. (*See generally* Exs. A, B, C to Compl., ECF No. 62, at 55−63.)

5

This saga finally came to an end the day after the incident, on May 31, 2014, when Robinson was taken to court and the sole pending charge against him—misdemeanor assault on a police officer—was *nolle prosequied*. (*See id.* ¶ 7.) Robinson was then released. (*See id.*)

**B.     Procedural Background**

Approximately one year after Robinson's encounter with the police, the Robinsons initiated the instant lawsuit against the District of Columbia, Prince George's County, and a number of individual officers from both jurisdictions. The Robinsons' 12-count complaint raises a series of constitutional, statutory, and common law claims against all Defendants. (*See generally id.*) As relevant here, the complaint asserts three constitutional claims against the MPD Officers—excessive force (Count I), unlawful entry (Count II), and false arrest or unreasonable seizure (Count III)—all arising under 42 U.S.C. § 1983, as well as common law claims for trespass (Count VII), negligence (Count IX), intentional infliction of emotional distress ("IIED") (Count X), and negligent infliction of emotional distress ("NIED") (Count XI). (*See id.* ¶¶ 87, 101, 111, 155, 171, 183, 192.) The complaint also raises a total of eight claims against the District of Columbia (*see id.* ¶ 87 (excessive force); ¶ 101 (unlawful entry); ¶111 (false arrest); ¶126 (Americans with Disabilities Act, Rehabilitation Act, and D.C. Human Rights Act); ¶ 155 (trespass); ¶ 171 (negligence); ¶ 183 (IIED); ¶ 192 (NIED)), but as far as the District is concerned, only one of these claims—trespass (which is alleged in Count VII)—is at issue here.[4]

Shortly after the Robinsons initiated this lawsuit, the municipal Defendants filed

---

[4] For reasons that are not explained, the District has moved to dismiss only the trespass claim. (*See* Defs.' Mot. at 1.)

6

separate motions to dismiss in which they argued, *inter alia*, that the Robinsons failed to make adequate allegations regarding the District's involvement in Robinson's arrest, and had also failed to include plausible allegations regarding a municipal policy or custom that had caused the alleged constitutional violations. (*See generally* Def. Prince George's County's Mot. to Dismiss the Am. Compl. ("PGC Mot. to Dismiss"), ECF No. 17; Def. District of Columbia's Mot. to Dismiss ("D.C. Mot. to Dismiss"), ECF No. 20.) This Court stayed all of the individual officers' obligations to respond to the complaint while it resolved the municipal Defendants' motions (*see* Min. Order of May 11, 2016), and in an oral ruling on July 27, 2016, this Court denied the municipal Defendants' motions in their entirety and lifted the stay (*see* Min. Entry of July 27, 2016; Min. Order of July 28, 2016; *see also* July 27, 2016 Hr'g Tr., ECF No. 49).[5] Plaintiffs then filed a Third Amended Complaint—the current operative complaint in this matter—which provided the names of previously unidentified individual officers, but did not otherwise materially alter the Robinsons' claims. (*See generally* Compl.)

On October 7, 2016, the District of Columbia and the 10 named MPD Officers filed the instant motion to dismiss, in which they argue that this Court must dismiss (1) all claims against the MPD Officers, and (2) the trespass claim against the District. (*See generally* Defs.' Mot.) With respect to the MPD Officers, Defendants maintain that because the complaint "contains no specific allegation as to any of the individual District officer defendants[,]" it is "completely vague" and "speculative" in a manner

---

[5] In this same oral ruling, the Court denied without prejudice the District's request for the dismissal of Plaintiffs' common law claims, and authorized the District to re-raise these arguments in conjunction with any challenge to the common law claims that the individual officers raised. (*See* July 27, 2016 Hr'g Tr. at 30:6–13.)

7

that "necessitates dismissal." (*Id.* at 7.)⁶ The motion to dismiss also argues that the Robinsons have failed to allege adequately all elements of a *prima facie* trespass claim. (*See id.* at 8–9.)

The Robinsons' brief in opposition to Defendants' motion was filed on October 21, 2016. (*See* Mem. in Supp. of Pls.' Opp'n to Defs.' Mot. ("Pls.' Opp'n"), ECF No. 65.) In their submissions, the Robinsons assert that Defendants "have offered no authority to support the contention that[,] at this stage of an excessive force case, a plaintiff must specifically identify which of the numerous officers involved actually hit, dragged, or kicked him." (Pls.' Suppl. Mem. in Supp. of Pls.' Opp'n to Defs.' Mot. ("Pls.' Suppl. Br."), ECF No. 76, at 16.)⁷ Plaintiffs' opposition brief further argues that the complaint alleges sufficient facts to support all elements of their trespass claim against the District. (*See* Pls.' Opp'n at 7–8.)

The pending motion to dismiss became ripe for this Court's review on February 10, 2017, after a series of court-ordered filings related to the issue of qualified immunity. (*See* Min. Order of Nov. 14, 2016; Individual Defs.' Suppl. to Mot. to Dismiss ("Defs.' Suppl. Br."), ECF No. 70; Pls.' Suppl. Br.; Individual Defs.' Reply to Pls.' Suppl. Mem. ("Defs.' Suppl. Reply"), ECF No. 77.) This Court held a hearing on Defendants' motion on April 27, 2017.

---

⁶ Defendants also contend that "the individual officers are entitled to qualified immunity" (Defs.' Reply to Pls.' Opp'n ("Defs.' Reply"), ECF No. 66, at 4), but the motion provides no relevant argument on the issue; instead, it makes qualified-immunity contentions that appear to be just another species of their lack-of-specificity argument. (*See, e.g.*, *id.* ("It is precisely the lack of detail as to each officer's alleged misconduct that mandates immunity."); *see also* Hr'g Tr. at 21:18–23 (defense counsel conceding that the "qualified immunity argument is linked to this same argument about notice and specificity[,]" and that the latter represents "the crux" of the qualified immunity argument such that "it's all kind of one thing").)

⁷ Plaintiffs further assert that the individual Defendants "have invoked the affirmative defense of qualified immunity . . . in name only[.]" (Pls.' Suppl. Br. at 26.)

## II. LEGAL STANDARDS

A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of a plaintiff's complaint, and as such, prompts an evaluation of whether or not the pleading contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Harris v. D.C. Water & Sewer Auth.*, 791 F.3d 65, 68 (D.C. Cir. 2015) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).

When evaluating a motion to dismiss, the Court must "treat the complaint's factual allegations as true and must grant plaintiff the benefit of all inferences that can be derived from the facts alleged[.]" *Sparrow v. United Air Lines, Inc.*, 216 F.3d 1111, 1113 (D.C. Cir. 2000) (internal quotation marks and citation omitted).

## III. ANALYSIS

As explained, the individual MPD Officers contend that Plaintiffs' "generalized use of the term 'Defendant Officers'" does not provide each of them with "fair notice of the grounds upon which Plaintiffs' claims rest" (Defs.' Reply to Pls.' Opp'n ("Defs.' Reply"), ECF No. 66, at 2; *see also* Defs.' Mot. at 7 (arguing that the complaint lacks "specific allegations concerning particular conduct on behalf of particular, individual officer defendants")), and the District further argues that the Robinsons' trespass claim omits allegations regarding required elements (*see* Defs.' Mot. at 8 (arguing that the Plaintiffs do not "allege that there was an interference with their possessory interest or make any allegation that the District Defendants intended to interfere")). Neither of

these arguments is persuasive, for the reasons explained below.

> **A. The Complaint's Description Of The Underlying Events Provides Sufficient Notice Of The Alleged Violations, And Defendants' Other Arguments For Dismissal Are Entirely Undeveloped**

The essence of the MPD Officers' dismissal argument is that the Robinsons' complaint "contains no *specific* allegation as to any of the individual District officer defendants[.]" (*Id.* at 2 (emphasis added).) In Defendants' view, this lack of specificity means that Plaintiffs' claims against these officers cannot advance, and defense counsel held fast to this peculiar notion—i.e., that an alleged victim of police brutality must be able to recite what actions each particular officer took during the course of the encounter in order to state a claim—during the motion hearing, repeatedly reiterating what the District's motion plainly maintains: that because the complaint broadly defines the "Defendant Officers" who allegedly beat and kicked Robinson to include *all* 38 officers (from both the District of Columbia and Prince George's County) that were on the scene on the date in question, it is insufficient to state a claim against *any* of the participants. (*See* Defs.' Reply at 2 (arguing that "[s]uch a generalized use of the term 'Defendant Officers'" warrants dismissal of the complaint); *see also* Defs.' Suppl. Reply at 5 ("There are no alleged facts as to who was watching, who was in a position to intervene, or who may or may not have reasonably believed that the other officers were engaged in unlawful activity.").)

Before delving into the merits of this argument, the Court notes that the MPD Officers have proffered no authority for the odd proposition that a complaint that alleges false arrest and other police officer misconduct must specifically link the complained-of conduct to *particular* police officers (presumably by name) in order to survive a motion to dismiss. The lack of any support for this quirky contention is not

10

surprising, because this Court cannot fathom how such could possibly be the state of the law. That is, at the beginning of the case—prior to discovery and before the plaintiff has access to any information about who the allegedly offending officers are, much less statements and reports from participants and witnesses regarding what each officer has done—it is impossible to imagine that a complaint involving the allegedly wrongful conduct of a number of police officers could *ever* contain the specificity that Defendants here say is required. And, indeed, existing precedent clearly indicates that no such pleading standard exists.

Specifically, courts have recognized that "an arrestee's inability to positively identify those who allegedly violated his rights is not *per se* fatal to his claims[,]" *Shankle v. Andreone*, No. 06-cv-487, 2009 WL 3111761, at *5 (E.D.N.Y. Sept. 25, 2009) (internal quotation marks and citation omitted), and this "is especially true where the acts complained of by the plaintiff, if true, . . . are likely to have prevented plaintiff from identifying which of [several] defendant officers specifically engaged in the bad acts[,]" *Kornegay v. New York*, 677 F. Supp. 2d 653, 657 (W.D.N.Y. 2010) (first two alterations in original) (internal quotation marks and citations omitted). To put it bluntly, when a plaintiff claims that multiple officers used excessive force, "it is not reasonable to expect [the] Plaintiff[] to be able to provide a detailed, blow-by-blow recitation of who did what and when." *Clark v. City of Chicago*, No. 10-C-1803, 2010 WL 4781467, at *3 (N.D. Ill. Nov. 17, 2010). (*See also* Hr'g Tr. at 6:9–14 (questioning the proposition that the Robinsons' complaint needed to include officer identifiers in regard to the conduct alleged by asking, "[h]ow is a person who is on the ground being kicked by officers . . . supposed to know which officer did what at this point?").)

Notably, even after discovery has been conducted in an excessive-force case, courts have rejected the argument that individual police officers are entitled to summary judgment if the plaintiff could not identify *which* of the officers struck the offensive blow. *See, e.g.*, *Kornegay*, 677 F. Supp. 2d at 657 (denying summary judgment motion where plaintiff could not say which of two officers hit him with a crutch when plaintiff's "back was to the officers both times he was struck"). How, then, can the MPD officers here reasonably maintain that the law requires a plaintiff to make such an individualized officer identification *at the outset*, prior to the stage of the litigation in which the pertinent facts about the events in question are made known?

In apparent recognition of the absurdity of this proposition, the MPD Officers' briefs subtly recast their specificity argument as one that sounds in plausibility—they insist that the Robinsons' complaint is alleging that each and every one of the 38 individual officers engaged in all of the conduct described, which, in defendant's view, is not plausible. (*See* Defs.' Reply at 3 (emphasizing that "[i]t is not possible that each and every officer 'stormed into' the home or 'hit and kicked' Mr. Robinson" (quoting Pls.' Opp'n at 3)); *see also* Hr'g Tr. at 5 (arguing that "it is simply implausible to suggest that all 38 officers were involved in dragging the plaintiff into the bathroom and assaulting him there").) But when viewed in the light most favorable to the plaintiffs, the Robinsons' complaint alleges no such thing. Rather, it merely contains a placeholder term—"Defendant Officers"—and necessarily defines that term to include the 10 named MPD Officers, the 24 PGPD Officers, and the 4 PGSO Officers (Compl. ¶ 4), before recounting in great detail the events that allegedly unfolded on May 30th, and asserting that the "Defendant Officers" either participated in the violation of

Robinson's Fourth Amendment rights, or stood by and failed to intervene as their fellow officers did so (*see, e.g.*, Compl. ¶¶ 92–95, 102–04, 117–20). It is clear to the Court that the Robinsons' complaint is structured this way *precisely because* Plaintiffs have to allege either direct participation or bystander liability in order to state a claim, *see Matthews v. Dist. of Columbia*, 730 F. Supp. 2d 33, 38–39 (D.D.C. 2010), but at this stage of the litigation, Plaintiffs do not know, and cannot be reasonably expected to know, which officer did what. This distinction is subtle but important. That is, rather than affirmatively—and implausibly—alleging that *all* 38 officers actively engaged in the conduct described, the Robinsons' complaint merely alleges that the conduct described occurred, and that each of the 38 listed officers were present such that *any* of them plausibly could have been a perpetrator or a bystander in regard to the allegedly abusive acts. Exactly who did what is not asserted, but this is not a fatal omission, because a plaintiff is not required to make such specific allegations at the motion-to-dismiss stage, as explained above. (*See supra*.)

Undaunted, the MPD Officers appear to have tried once more to recharacterize their lack-of-specificity contention—this time, in the form of a fleeting "qualified immunity" reference that is entirely devoid of any relevant substance. (*See* Defs.' Mot. at 2 ("[I]n the absence of specific allegations concerning particular conduct on behalf of particular, individual officer defendants, the officers cannot determine whether they are entitled to qualified immunity."); *see also* Defs.' Suppl. Reply at 2 (arguing that the fundamental issue "is less about whether or not kicking a disabled person is a Constitutional violation, and more about whether a Constitutional violation—whatever it is—can even be alleged when done with factual allegations that are over-broad and

lacking in any specificity"); Defs.' Reply at 4 ("It is precisely the lack of detail as to each officer's alleged misconduct that mandates immunity.").) During the motion hearing, in response to questioning from the Court, defense counsel clarified that the MPD Officers' qualified immunity assertion was, in fact, none other than the same contention that Defendants were pressing regarding Plaintiffs' failure to state with specificity which of the officers engaged in what aspect of the conduct alleged. (*See* Hr'g Tr. at 21 (Q: "So is your qualified immunity argument linked to this same argument about notice and specificity? Is that really the crux of it?" A: "That's the way I understand it").) Thus, the Court agrees with Plaintiffs that the MPD Officers have invoked the defense of qualified immunity in name only, and as a result, the purported "qualified immunity" basis for dismissal fails for the same reason as the faulty specificity assertion discussed above.

Notably, to the extent that the MPD Defendants could have asserted qualified immunity in the traditional sense and developed substantive arguments with respect to that defense, they have failed to do so, notwithstanding this Court's express willingness to consider such arguments. (*See* Min. Order of Nov. 14, 2016 (ordering supplemental briefing on the issue of qualified immunity "because neither side has developed its qualified immunity arguments with enough specificity for this Court to decide the merits of Defendants' motion").) This Court need not, and will not, address undeveloped arguments for dismissal on this or any other ground. *See Crespo v. Colvin*, 824 F.3d 667, 674 (7th Cir. 2016) ("[P]erfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived[.]" (internal quotation marks and citation omitted)); *Johnson v. Panetta*, 953 F. Supp. 2d 244, 250

(D.D.C. 2013) (same). And the MPD Officers' conclusory contentions that the Robinsons' common law claims should be dismissed also undoubtedly fit into the woefully undeveloped category. (*See* Defs.' Mot. at 8 (arguing, without further elaboration, that "the Complaint fails to state a common law tort claim against any individual officer on which relief can be granted"); Defs.' Reply at 1 (arguing, with no further explanation, that "Plaintiffs fail to properly plead a common law tort claim against the defendant officers").)[8]

In sum, because the MPD Officers cannot support the misguided notion that more specificity regarding individual officer conduct is needed at this stage of the litigation, and because their remaining arguments about dismissal of the complaint's claims are utterly underdeveloped, the MPD Officers' motion to dismiss must be **DENIED**.

### B. The Complaint States A Trespass Claim Against The District Of Columbia

The District's argument that the complaint's trespass allegations are insufficient (*see* Defs.' Mot. at 8–9) also fails. "'[T]he tort of trespass in the District of Columbia is the intentional intrusion of a person or thing upon property that invades and disrupts the owner's exclusive possession of that property.'" *Garay v. Liriano*, 943 F. Supp. 2d 1, 25 (D.D.C. 2013) (quoting *Morgan v. Barry*, 12 F. App'x. 1, 3 (D.C. Cir. 2000)).

---

[8] The conclusory nature of the MPD Defendants' contentions in regard to the complaint's common law claims is not for lack of trying on the Court's part: during the hearing, the Court repeatedly pressed defense counsel to articulate the basis for his assertion that the common law claims cannot proceed— say, by pointing to the common law claims and articulating the missing elements at issue—but defense counsel repeatedly declined to do so. (*See* Hr'g Tr. at 43 (Q: "[T]ell me what elements are missing with regard to the common law claims." A: "I would not be able to approach it in the specific way you want it."); *id.* at 40 ("I can't give you specificity with regard to which common law claim.").) It almost goes without saying that the Court can only seriously consider the legal positions that a party is willing and able to explain. And, to the extent that Defendants' argument for the dismissal of Plaintiffs' common law claims amounts to the same specificity argument that they raised with respect to their constitutional claims (*see* Defs.' Reply at 1–4), this argument fails for the reasons already discussed.

Trespass thus requires "(i) an unauthorized entry (ii) onto the plaintiff's property (iii) that interferes with the plaintiff's possessory interest." *Council on Am.-Islamic Relations Action Network, Inc. v. Gaubatz*, 793 F. Supp. 2d 311, 344 (D.D.C. 2011).

In the instant case, the Robinsons broadly allege that "Farley and certain Defendant Officers purposefully intruded upon the Robinsons' apartment when they entered through the patio door and the front door and remained inside for several minutes, all without authorization from Michael, Mrs. Robinson, or any other resident." (Compl. ¶ 156.) The complaint describes in great detail this purportedly unauthorized entry (*see, e.g.*, *id.* ¶ 70 ("Defendant Officers rushed past Mrs. Robinson and into the apartment, with firearms drawn, while she loudly screamed, 'No!'")), and Plaintiffs allege that the officers' unauthorized entry "disrupted Michael's and Mrs. Robinson's exclusive possession and use of their apartment" (*id.* ¶ 156). If true, these allegations clearly would satisfy the elements of a trespass claim as laid out above; therefore, it is plain on the face of the complaint that the Robinsons have stated a *prima facie* claim for trespass.

The District makes two arguments regarding why this is not so. First, the District says, the complaint does not contain sufficient allegations regarding *interference* with the Robinsons' possessory interest, and second, the District maintains that the complaint fails to allege that the District Defendants *intended* to interfere with that interest. (*See* Defs.' Mot. at 8–9.) With respect to the first argument, the District argues that the allegations of the complaint establish only that the officers were inside the Robinsons' home for "'several minutes'" (*id.* at 9 (quoting Compl. ¶ 156)), and in the District's view, that brief period is insufficient to support a claim "that MPD

officers interfered with [Plaintiffs' possessory] interest" (*id.*). The District makes no attempt to explain how the degree of the alleged intrusion into the plaintiff's possessory interest has any bearing on the validity of a trespass claim, and well-settled authority indicates that it has none. *See* Restatement (Second) of Torts § 158 cmt. h (1965) ("A trespass by way of an entry by the actor in person may be a mere momentary invasion[.]"). The District has provided no authority for the proposition that the alleged disruption of a possessory interest that gives rise to a trespass claim must be a lengthy one, and this is likely so because no such authority exists.

The District's second argument fares no better. The District contends that, because "the defendant officers merely had the intent to secure a criminal suspect" (Defs.' Reply at 6), the Robinsons have failed to "make any allegation that the District Defendants intended to interfere" with Plaintiffs' possessory interests for the purpose of their trespass claim (Defs.' Mot. at 8; *see also id.* at 9 (emphasizing that the "MPD officers' intent was not to unlawfully enter the property but to respond to an officer's call for backup in the face of a potentially hostile suspect")). It is erroneous to suggest, as the District does, that the relevant "intent must be to interfere with Plaintiffs' possessory interest in the property" (Defs.' Reply at 6 (emphasis omitted)); rather, it is well established that all that is required to satisfy the intent element of a trespass claim is "a conscious intent to do the act that constitutes the entry upon someone else's real or personal property." *Nat'l Tel. Co-op. Ass'n v. Exxon Corp.*, 38 F. Supp. 2d 1, 12 (D.D.C. 1998) (internal quotation marks and citation omitted); *see also id.* ("[L]iability for trespass does *not* depend on a defendant's specific intent to invade unlawfully the property of another[.]" (emphasis added)).

17

Nor does it matter that the officers entered the Robinsons' home for law-enforcement purposes. While it is true an officer's *lawful* entrance into a home will not constitute a trespass, "[l]aw enforcement officers who enter premises without authority are subject to common law trespass actions." *Garay*, 943 F. Supp. 2d at 25 (internal quotation marks and citation omitted); *see also id.* at 25–26 (collecting cases). In this case, the Robinsons have alleged that the officers did not have the lawful authority to enter the premises, and as a result, the officers' law-enforcement motives are no impediment to the Robinsons' trespass claim.

Because the Robinsons' complaint adequately alleges that the District officers intentionally entered the Robinsons' residence and thereby interfered with the Robinsons' possessory interests, this Court concludes that the Robinsons have stated a valid trespass claim against the District of Columbia.

## IV. CONCLUSION

For the reasons explained above, the Robinsons' complaint describes with ample specificity the events that purportedly unfolded on May 30, 2014, and also contains the necessary factual allegations to state a trespass claim against the District. Consequently, as set forth in the accompanying Order, the District Defendants' Motion to Dismiss will be **DENIED**.

DATE: September 1, 2017

*Ketanji Brown Jackson*
KETANJI BROWN JACKSON
United States District Judge